**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruby Gatling, | No. CV-15-08070-PCT-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, et al., | |
| Defendants. | |

Pending before the Court is Defendant United States of America's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. (Doc. 12.) The United States subsequently also submitted a Notice of Substitution. (Doc. 18.) The parties have properly responded and the matter is fully briefed. (Docs. 19-21.) After carefully considering the briefing, the Court makes the following ruling.

**I. BACKGROUND**

**A. Statutory Background**

In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"), Pub. L. 93-638, 88 Stat. 2203 (Jan. 4, 1975). "The ISDEAA created a system by which tribes could take over the administration of Programs operated by the [Bureau of Indian Affairs]." Shirk v. U.S. ex rel. Dep't of Interior, 773 F.3d 999, 1001 (9th Cir. 2014) (quoting Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell, 729 F.3d 1025, 1033 (9th Cir. 2013)) (internal quotations omitted). Under the ISDEAA, a tribe "receiving a particular service from the BIA may submit a contract proposal to the BIA to take over the program and operate it as a

contractor and receive the money that the BIA would have otherwise spent on the program." Shirk, 773 F.3d at 1001.

### B. Factual Background

Plaintiff Ruby Gatling brought the present action on April 30, 2015, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, et seq., and Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388 (1971), alleging claims of negligence, assault, battery, denial of due process, illegal search and seizure, and cruel and unusual punishment. (Doc. 1.) Plaintiff alleges that that on March 15, 2014, she was arrested without explanation and taken to the Window Rock Jail, located on the Navajo Indian reservation in northeastern Arizona. (Id. ¶ 7.) Plaintiff states that while incarcerated, Defendants April Ashley and Eric Williams, both Navajo tribal correctional officers, hit her in the face, fractured her arm, kicked her multiple times, and threw her to the ground causing a severe head injury. (Id. ¶¶ 8-9.) Plaintiff does not allege that Defendant Delores Greyeyes, the director of the Navajo Department of Corrections, participated in the alleged assault and battery, but rather "wrongfully deprived Plaintiff of her liberty by holding her in the Window Rock Jail from March 15-18, 2014 without probable cause, due process and without reasonable suspicion that she had committed an offense." (Id. ¶ 6.) Furthermore, Plaintiff alleges that the United States was negligent on a theory of vicarious liability, or negligent hiring and supervision, for the Navajo Nation's failure "to conform to its legal duty to properly supervise the Individual Defendants." (Id. ¶ 13.)

At the time of the alleged incident, the Navajo Nation had a contract pursuant to the ISDEAA with the Secretary of the Interior to provide adult corrections services to the Navajo Nation. (Doc. 18 ¶ 5.) Defendants Ashley, Williams, and Greyeyes were engaged in the performance of functions covered by this contract and were acting within the scope of their employment as employees of the United States through its agency, the Bureau of Indian Affairs. (Id. ¶¶ 5, 7; Doc. 18-1.) Pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, §§ 5, 6, Pub. L. No. 100-694 (1988) ("Westfall Act") (codified at 28 U.S.C. § 2679(d)(2)), the U.S. is substituted for the

individual Defendants Ashley, Williams, and Greyeyes for the negligence, battery, and assault claims. (Doc. 18 at 1.)

**II. STANDARD OF REVIEW**

The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the Court. See Fed.R.Civ.P. 12(b)(1) and 12(h)(3). Plaintiff, as the party seeking to invoke the jurisdiction of the court, bears the burden of establishing subject matter jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182–83 (1936); Fenton v. Freedman, 748 F.2d 1358, 1359 (9th Cir. 1994). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either a facial or a factual challenge. When the moving party facially challenges jurisdiction based on the allegations in the complaint, the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). On the other hand, when a court reviews a complaint under a factual challenge, the allegations have no presumptive truthfulness, Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (internal quotation ommitted), and the court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits of [the] case." Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Rather, the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. See Valdez v. United States, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, (9th Cir. 1995); Mortensen, 549 F.2d at 891.

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or

a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.' " Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting Twombly, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 555) (internal citations and quotation marks omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising its discretion to deny leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

**III. DISCUSSION**

**A. Plaintiff's Claims for Denial of Due Process (Claim 2), Illegal Search and Seizure (Claim 3), and Cruel and Unusual Punishment (Claim 4).**

The Court will first deal with Plaintiff's claims 2, 3, and 4. Plaintiff brings these claims pursuant to Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388 (1971), alleging that she was denied due process (claim 2), illegally searched and seized (claim

3), and subject to cruel and unusual punishment (claim 4). (Doc. 1.) Bivens allows plaintiffs to bring private causes of action against the federal government for damages when there has been a violation of the U.S. Constitution by federal officers acting under the color of federal authority. See Id. Plaintiff's Complaint is unclear as to whether she meant for claims 2, 3, and 4 to be filed against the United States, the individual officer defendants, or both. In her response to the United States' motion to dismiss, Plaintiff clarifies that she did not intend to bring these Bivens claims against the United States (Doc. 20 at 1.) Rather, Plaintiff intended for the Bivens claims to be brought against Defendants Ashley, Williams, and Greyeyes, and only claims 1, 5, and 6, to be brought against the United States. (Id.) Therefore, the Court finds that claims 2, 3, and 4 do not apply to the United States and therefore will be dismissed with prejudice as to the United States.

**B. Plaintiff's Claims for Battery (Claim 5) and Assault (Claim 6).**

Plaintiff alleges that the United States, acting vicariously through the actions of the other individual Defendants, is liable for both battery and assault. (Doc. 1 at 6.) In response, the United States facially attacks these assertions and argues that the Court does not have subject matter jurisdiction over the claims because it is protected under the doctrine of sovereign immunity. (Doc. 12 at 5.)

As a sovereign, the United States is generally immune from suit except to the extent that it consents to be sued. "The party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity." Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1993) (quoting Holloman v. Watt, 708 F.2d 1399, 1401 (9th Cir. 1983)). "Only Congress enjoys the power to waive the United States' sovereign immunity." Dunn & Black, P.S. v. United States, 492 F.3d 1084, 1090 (9th Cir. 2007). "Sovereign immunity is not merely a defense to an action against the United States, but a jurisdictional bar." Powelson v. United States, 150 F.3d 1103, 1104 (9th Cir. 1998).

With regards to tort liability, however, under the FTCA the United States has waived its sovereign immunity "under circumstances where the United States, if a private

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). There is an exception to this general provision, though, wherein the United States maintains its sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process" and other enumerated intentional torts. Id. § 2680(h). This exception is also subject to its own exception, which waives the United States' sovereign immunity with respect to intentional torts committed by federal law enforcement officers. Id. The FTCA defines a federal law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrest for violations of Federal law." Id.

In 1990, Congress extended the FTCA's waiver of sovereign immunity to claims "resulting from the performance of functions . . . under a contract, grant agreement, or cooperative agreement authorized by the [ISDEAA] of 1975." 25 U.S.C. § 450(f); see Shirk, 773 F.3d at 1003. Tribal officers are deemed employees of the BIA for the limited purpose of FTCA coverage, subject to their actions falling "within the scope of their employment in carrying out the contract or agreement." Department of the Interior and Related Agencies Appropriation Act, Pub.L. 101-512, § 314, 104 Stat. 1915 (1990).[1] However, "[t]ribal law enforcement officers operating under a BIA contract or compact are not automatically commissioned as federal officers" within the meaning of § 2680(h). 25 C.F.R. § 12.21(b). Rather, a tribal officer requires a special law enforcement commission ("SLEC") issued by the BIA before qualifying as a federal law enforcement officer under § 2680(h). See Id. Therefore, the FTCA federal law enforcement officer exception to the intentional tort exception does not apply to tribal officers not in possession of an SLEC, meaning sovereign immunity is not waived and subject matter jurisdiction does not exist. See Trujillo v. United States, 313 F. Supp. 2d 1146, 1151 (D.N.M. 2003); Henin v. Cancel, 708 F. Supp. 2d 1315, 1319 (S.D. Fla. 2010); Williams v. Naswood, No. CV-10-8080-PCT-FJM, 2011 WL 867520, at *1 (D. Ariz. Mar. 14,

---

[1] Often referred to as "§ 314 claims." See Shirk, 773 F.3d at 1003.

- 6 -

2011).

The acrobatic legal analysis required by these statutes leads the Court to the conclusion that it does not have subject matter jurisdiction over Plaintiff's claims for assault and battery against the United States. Typically, under the statutory regime, intentional torts committed by federal law enforcement officers are not barred by sovereign immunity. However, here, the federal employees performing law enforcement functions, did not have SLEC's. (Doc. 12-1 ¶ 4.)  In his declaration, Assistant Special Agent John R. Burge states that "at no time has the BIA issued a SLEC to Corrections Officer April Ashley or Correction Officer Eric Williams." (Id.) Accordingly, the individual Defendants did not qualify as federal law enforcement officers under section 2680(h) and the United States does not waive its sovereign immunity. Therefore, the Court does not have subject matter jurisdiction over Plaintiff's claims for assault and battery, as alleged against the United States, and must dismiss them.

### C. Plaintiff's Claim for Negligence (Claim 1).

The exceptions discussed above are not triggered by non-intentional torts, such as negligence, however. In such situations, where sovereign immunity does not act as a jurisdictional bar to tort liability under § 314, further analysis is required. District courts are directed to perform a two-part analysis in determining whether a tribal officer's actions fall within the purview of § 314, thereby subjecting the United States to tort liability. Shirk, 773 F.3d at 1006.

> At the first step of the § 314 inquiry, courts must determine whether the alleged activity is, in fact, encompassed by the relevant federal contract or agreement. The scope of the agreement defines the relevant "employment" for purposes of the scope of employment analysis at step two. Second, courts must decide whether the allegedly tortious action falls within the scope of the tortfeasor's employment under state law.[2] If both of these

---

[2] To determine scope of employment, Arizona courts consider the extent to which the employee was subject to the employer's control. See, e.g., Consol. Motors, Inc. v. Ketcham, 49 Ariz. 295, 305, 66 P.2d 246, 256 (1937); Engler v. Gulf Interstate Eng'g, Inc., 230 Ariz. 55, 58, 280 P.3d 599, 602 (2012). Additionally, Arizona courts look to the

- 7 -

prongs are met, the employee's actions are covered by the FTCA. Id. "A plaintiff's failure at either step is sufficient to defeat subject matter jurisdiction" and a "court may choose to decide the case at either step of the inquiry." Id.

Here, both parties agree that at the time of the alleged incident, Defendants were engaged in performing functions encompassed by the federal contract and that the Defendants were acting within the scope of their employment, thus satisfying both § 314 prongs. (Docs. 1 ¶ 5; 18 ¶¶ 5, 7.) The Court also agrees with these conclusions. First, the Navajo Nation had a contract to provide adult correction services; accordingly, Defendants' actions fell within the purview of the contract. Second, following Arizona standards, the Court finds that Defendants were acting within the scope of their employment. They were performing duties that they were hired to perform, during working hours, which furthered the "enterprise" of adult correctional services. Therefore, the Court has subject matter jurisdiction over Plaintiff's negligence claim as alleged against the United States.

The question remains, however, whether Plaintiff adequately stated a claim for negligent supervision pursuant to 12(b)(6). The United States argues Plaintiff has only made insufficient conclusory allegations that are threadbare of any factual content. (Doc. 12 at 8.) "For an employer to be held liable for the negligent hiring, retention, or

---

Restatement of Agency, which provides numerous relevant factors for determining whether an employer exercised actual control or retained the right to control the employee's conduct when the negligent act occurred. See Restatement (Second) of Agency §§ 219, 220, 228, 229; see, e.g., Engler, 230 Ariz. at 58, 280 P.3d at 602; Santiago v. Phx. Newspapers, Inc., 164 Ariz. 505, 508–09, 794 P.2d 138, 141-42 (1990). These include whether the act (a) was the kind the employee was hired to perform, (b) was commonly done by the employee, (c) occurred within the employee's working hours, and (d) furthered the employer's purposes or fell outside the employer's "enterprise." Engler, 230 Ariz. at 58, 280 P.3d at 602 (2012); see Higgins v. Assmann Elec., Inc., 217 Ariz. 289, 297, 173 P.3d 453, 461 (App. 2007) (citing Restatement (Second) of Agency § 229 (Am. Law Inst. 1958)); Anderson v. Gobea, 18 Ariz.App. 277, 280, 501 P.2d 453, 456 (1972) (citing Restatement (Second) of Agency § 228 (Am. Law Inst. 1958)).

supervision of an employee, a court must first find that the employee committed a tort." Kuehn v. Stanley, 208 Ariz. 124, 130 (App.2004) ("If the theory of the employee's underlying tort fails, an employer cannot be negligent as a matter of law for hiring or retaining the employee."). The Court, in viewing the complaint in a light most favorable to Plaintiff, finds that it alleges "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiff provides sufficient factual allegations to indicate that the individual Defendants Ashley, Williams, and Greyeyes plausibly committed torts while employed by the United States, which in turn would make the United States liable for negligent supervision. For these reasons, the Court will not dismiss the negligence claim as alleged against the United States.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** granting in part Defendant the United States of America's Motion to Dismiss. (Doc. 12.) Plaintiff Ruby Gatling's claims 2, 3, 4, 5, and 6 as alleged against the United States shall be dismissed with prejudice.

**IT IS FURTHER ORDERED** denying in part Defendant the United States of America's Motion to Dismiss. (Doc. 12.) Plaintiff's claim 1 for negligence shall not be dismissed as alleged against the United States.

**IT IS FURTHER ORDERED** setting this matter for Rule 16 Preliminary Pretrial Conference for **February 29, 2016 at 2:30 pm** in Courtroom 401, 401 West Washington Street, Phoenix, AZ 85003.

Dated this 12th day of January, 2016.

Honorable Stephen M. McNamee
Senior United States District Judge