**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ruby Gatling,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>    Defendants. | No. CV-15-08070-PCT-SMM<br><br>**ORDER** |

Pending before the Court are Defendant United States of America's Motion to Dismiss First Amended Complaint (Doc. 45), Motion to Strike Answer to Amended Complaint (Doc. 42), and Plaintiff's Motion for Extension of Time to File Response/Reply (Doc. 48). Plaintiff has responded and the matter is fully briefed. (Docs. 45, 49.) After carefully considering the briefing, the Court makes the following ruling.

**I. BACKGROUND**

    **A. Statutory Background**

In 1975, Congress enacted the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"), Pub. L. 93-638, 88 Stat. 2203 (Jan. 4, 1975). "The ISDEAA created a system by which tribes could take over the administration of Programs operated by the [Bureau of Indian Affairs ("BIA")]." Shirk v. U.S. ex rel. Dep't of Interior, 773 F.3d 999, 1001 (9th Cir. 2014) (quoting Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell, 729 F.3d 1025, 1033 (9th Cir. 2013)) (internal quotations omitted). Under the ISDEAA, a tribe "receiving a particular service from the

BIA may submit a contract proposal to the BIA to take over the program, operate it as a contractor, and receive the money that the BIA would have otherwise spent on the program." Shirk, 773 F.3d at 1001.

### B. Factual Background

Ruby Gatling brought the present action on April 30, 2015 and amended her complaint on April 1, 2016. Under to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, et seq., she alleges claims of negligence, assault, battery, and false imprisonment. (Doc. 39.) Plaintiff alleges that on March 15, 2014, she was arrested without probable cause. (Id. at ¶ 8.) Plaintiff states that while incarcerated, Defendants April Ashley and Eric Williams, both Navajo tribal correctional officers, hit her in the face, fractured her arm, kicked her multiple times, and threw her to the ground causing a severe head injury. (Id. at ¶¶ 9-10.) Plaintiff does not allege that Defendants Delores Greyeyes or Carlos Yazzie participated in the alleged assault and battery, but rather "confined Plaintiff without any legal right to do so." (Id. at ¶ 29.) Furthermore, Plaintiff alleges that the United States was negligent on a theory of vicarious liability, or negligent hiring and supervision for the "failure of Individual Defendants [Ashley, Williams, Greyeyes, and Yazzie] to conform to their legal duty of care." (Id. at ¶ 14.)

At the time of the alleged incident, the Navajo Nation had a contract pursuant to the ISDEAA with the Secretary of the Interior to provide "Law Enforcement-Patrol" and "Adult Detention" services to the Navajo Nation. (Docs. 45-2, 45-3.) The United States' Attorney for the District of Arizona submitted certifications that Defendants Ashley, Williams, Greyeyes, and Yazzie were engaged in the performance of functions covered by this contract and were acting within the scope of their employment as employees of the United States through its agency, the Bureau of Indian Affairs. (Docs. 18-1; 44-1.) The United States contends that upon this certification, the employees are dismissed from the action, and the United States is substituted as defendant in place of the employees. 28 U.S.C. § 2679 d(1),(2); (Doc 45 at 4-6).

///

## II. STANDARD OF REVIEW

The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the Court.  See Fed.R.Civ.P. 12(b)(1) and 12(h)(3).  Plaintiff, as the party seeking to invoke the jurisdiction of the court, bears the burden of establishing subject matter jurisdiction. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182–83 (1936); Fenton v. Freedman, 748 F.2d 1358, 1359 (9th Cir. 1994). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may either be a facial or a factual challenge. When the moving party facially challenges jurisdiction based on the allegations in the complaint, the court must consider all the allegations in the complaint as true, and will not look beyond the face of the complaint to determine jurisdiction. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). On the other hand, when a court reviews a complaint under a factual challenge, the allegations have no presumptive truthfulness, Ritza v. International Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (internal quotation omitted), and the court is not limited to the allegations in the pleadings if the "jurisdictional issue is separable from the merits of [the] case." Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Rather, the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. See Valdez v. United States, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, (9th Cir. 1995); Mortensen, 549 F.2d at 891.

## III. DISCUSSION

First, Plaintiff alleges that the United States is vicariously liable for the failure of Individual Defendants to conform to their legal duty of care in their treatment of her. (Doc. 38 at 3-4.) Second, Plaintiff alleges that Defendants Ashley and Williams are liable for battery and assault. (Doc. 39 at 5-6.)  Finally, Plaintiff alleges that Defendants Greyeyes and Yazzie are liable for false imprisonment. (Doc. 39 at 6.)  In response, the United States argues that under the FTCA, the Court does not have subject matter jurisdiction over the claims of (1) assault and battery against Defendants Ashley and

1  Williams, (2) false imprisonment against Defendant Greyeyes, (3) negligent supervision
2  against Defendant United States arising out of the battery and assault allegedly
3  committed by Defendants Ashley and Williams, and (4) negligent supervision against
4  Defendant United States arising out of the false imprisonment allegedly committed by
5  Defendant Greyeyes. The Court must consider whether jurisdiction exists under the
6  FTCA and whether the claims should be dismissed.

Further, in considering a 12(b)(1) motion to dismiss, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

**A. Defendant United States of America's Substitution for Individual Defendants**

Under the ISDEAA, 25 U.S.C. § 450f, tribes and tribal organizations may enter into contracts with the federal government, commonly referred to as "638 contracts." These contracts allow tribes to receive funding for programs such as education and law enforcement if they adhere to federal requirements and guidelines. The employees of the federally funded programs created by these 638 contracts are considered employees of the Bureau of Indian Affairs. 25 U.S.C. § 450f (note). Congress has explained that:

> with respect to claims resulting from the performance of functions…under a contract authorized by the [ISDEAA], an Indian tribe, tribal organization, or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs…while carrying out any such contract…and its employees are deemed employees of the Bureau or Service while acting within the scope of their employment in carrying out the contract.

Id. Employees of a tribe, tribal organization, or contractor are considered federal employees when working within the scope of their employment in carrying out the contract. Id.; (Doc. 45-2 at 16) ("For purposes of FTCA coverage, the Navajo Nation and its employees are deemed to be employees of the Federal Government while performing work under this contract").

If the tribe, tribal organization, or contractor is covered by this provision, any civil

- 4 -

action brought against their employees "shall be deemed to be an action against the United States and will be defended by the Attorney General and be afforded the full protection and coverage of the Federal Torts Claim Act." Pub. L. No. 101–121, § 315, 103 Stat. 701, 744 (1989); Pub. L. No. 101–512, tit. III, § 314, 104 Stat. 1915, 1959–60 (1990). This waiver of sovereign immunity applies only where those tribes, tribal organizations, or contractors were acting within the scope of their employment while carrying out a 638 contract. Id.; Shirk v. United States, 773 F.3d 999, 1003-1007 (9th Cir. 2014).

Under the Westfall Act, the Attorney General or her designee is empowered to certify that a federal employee who is sued for negligent or wrongful acts "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1), (2). After this certification, the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. Id. Thereafter, the case is governed by the FTCA and is "subject to the *limitations and exceptions* applicable to those actions." United States v. Smith, 499 U.S. 160, 166 (1991) (emphasis in original); 28 U.S.C. § 2679(d)(4).

When the United States is a defendant for an FTCA claim, the FTCA provides that:

> [t]he remedy against the United States…for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive of any other civil action or proceeding for money damages* by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.

28 U.S.C. § 2679(b)(1) (emphasis added).

Here, Defendants Wilson, Ashley, Greyeyes, and Yazzie were clearly acting within the scope of their employment, namely "Law Enforcement-Patrol" and "Adult Detention" services as specified in the relevant 638 contracts, No. A13AV00222 and No. A13AV00207, between the Navajo Nation and the United States Department of the Interior. (Docs. 45-2, 45-3.) Therefore, Defendants Wilson, Ashley, Greyeyes, and

Yazzie are federal employees. The United States' Attorney certified that these individual Defendants, as federal employees, were acting within the scope of their employment, pursuant to their 638 contracts. (Docs. 18, 44.) Accordingly, upon this certification, Defendants Ashley, Williams, Greyeyes, and Yazzie are dismissed from this action and the United States is substituted in place of them for each of their alleged actions. The only proper party defendant is the United States.

**B. Plaintiff's Claim for Assault (Claim 2), Battery (Claim 3), and False Imprisonment (Claim 4).**

Pursuant to the Westfall Act, when the United States is substituted for the individual defendants, Plaintiff's claims for assault, battery, and false imprisonment are barred by the FTCA's limited waiver of sovereign immunity. When the United States is a defendant, the provisions of the FTCA will not apply to: "[a]ny claim arising out of assault, battery, false imprisonment, false arrest" and other enumerated intentional torts. 28 U.S.C. § 2680. This is subject to an exception regarding intentional torts committed by federal law enforcement officers:

> with regard *to acts or omissions of investigative or law enforcement officers* of the United States Government, the provisions of this chapter and section 1346(b) of this title *shall apply* to any claim arising…out of *assault, battery, false imprisonment*, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, *"investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law*.

28 U.S.C. § 2680 (emphasis added). Section 2680(h) waives sovereign immunity for suits against the United States arising out of intentional torts committed by its law enforcement officers acting within the scope of their employment. See Trujillo v. United States, 313 F. Supp. 2d 1146, 1149 (D.N.M. 2003).

Tribal officers are deemed employees of the BIA for the limited purpose of FTCA coverage, subject to their actions falling "within the scope of their employment in carrying out the contract or agreement." Department of the Interior and Related Agencies

Appropriation Act, Pub.L. 101-512, § 314, 104 Stat. 1915 (1990).[1] However, "[t]ribal law enforcement officers operating under a BIA contract or compact are not automatically commissioned as federal officers" within the meaning of § 2680(h). 25 C.F.R. § 2680(h). Rather, a tribal officer requires a special law enforcement commission ("SLEC") issued by the BIA before qualifying as a federal law enforcement officer under § 2680(h). See id. Accordingly, the FTCA federal law enforcement officer exception to the intentional tort exception does not apply to tribal officers not in possession of an SLEC. Therefore, sovereign immunity is not waived and subject matter jurisdiction does not exist. See Trujillo, 313 F. Supp. at 1151; Henin v. Cancel, 708 F. Supp. 2d 1315, 1319 (S.D. Fla. 2010); Williams v. Naswood, No. CV-10-8080-PCT-FJM, 2001 WL 867520, at *1 (D. Ariz. Mar. 14, 2011).

Typically, intentional torts committed by federal law enforcement officers are not barred by sovereign immunity under the statutory regime. Here, however, the federal employees did not have SLEC's. (Docs. 12-1 at ¶ 4; 45-1 at ¶ 5.) In his declarations, Assistant Special Agent John R. Burge asserted that the BIA has not issued an SLEC to Defendants Ashley, Williams, or Greyeyes (Docs. 12-1 at ¶ 4; 45-1 at ¶ 5.) Because Defendants Ashley, Williams, and Greyeyes did not have SLECs, they will not be considered federal law enforcement officers and the "intentional torts" exception in § 2680(h) cannot apply to them.[2]

Accordingly, the United States does not waive its sovereign immunity for Plaintiff's claims against the United States for assault, battery, and false imprisonment allegedly committed by those BIA contract employees that did not have an SLEC, namely Ashley, Williams, and Greyeyes. Therefore, the Court concludes that it does not have subject matter jurisdiction over Plaintiff's claims for assault, battery, and false imprisonment against the United States for the actions of Ashley, Williams, and Greyeyes

---

[1] Often referred to as "§ 314 claims." See Shirk, 773 F.3d at 1003.

[2] Defendant Yazzie did have an SLEC. (Doc. 45-1.) The United States is not seeking to dismiss the portion of the false imprisonment claim for the actions allegedly committed by Defendant Yazzie. (Doc. 45 at 6, n.3.)

- 7 -

and dismisses them.

Defendant Yazzie was issued a SLEC before the incident involving Plaintiff. Therefore, he will be considered a federal law enforcement officer for the purposes of § 2680(h) and is subject to the intentional tort exception. Accordingly, Plaintiff's claims against the United States for the alleged false imprisonment actions of Yazzie will not be dismissed. Because the United States is substituted for Yazzie, they are responsible for the claims against him for his alleged false imprisonment.

**C. Plaintiff's Claim for Negligence (Claim 1).**

In Arizona, as defined by A.R.S. § 13-409, law enforcement officers have a privilege to use force to effectuate an arrest:

> A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:
> 1. A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
> 2. Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained.
> 3. A reasonable person would believe the arrest or detention to be lawful.

A.R.S. § 13-409.

Plaintiff concedes that the officers were privileged to use force to effectuate her arrest, but Defendants were negligent when they exceeded this privilege. In support of her claim, Plaintiff argues that while the officers were detaining her, they were acting in self-defense as opposed to making an arrest or detention pursuant to their statutory right. By rooting her excessive force claims in a theory of self-defense, Plaintiff contends that "excessive force" is a negligence-based tort, not an intentional tort. First, Plaintiff has not provided and the Court cannot find any Arizona authority expressly recognizing that an excessive force claim is rooted exclusively in negligence or that self-defense is an applicable theory justifying an officer making an arrest. Second, there are no cases or applicable statutes that suggest negligent-assault or negligent-battery exist. Finally, the

- 8 -

Court finds that these claims are better suited as 42 U.S.C. §1983 claims. See e.g. Graham v. Connor, 490 U.S. 386 (U.S. 1989) (recognizing §1983 as a cause of action for excessive force during an arrest); Velazquez v. City of Long Beach, 793 F.3d 1010 (9th Cir. 2015) (utilizing §1983 as a cause of action for an alleged unlawful arrest and excessive force claim).

Furthermore, the District of Columbia Court of Appeals has noted that "[i]ntent and negligence are regarded as mutually exclusive grounds for liability." D.C. v. Chinn, 839 A.2d 701, 706 (D.C. 2003). The Court in Chinn spells out the relationship between the privilege of use of force and excessive force:

> [s]trictly speaking, a police officer effecting an arrest commits a battery. If the officer does not use force beyond that which the officer reasonably believes is necessary, given the conditions apparent to the officer at the time of the arrest, he is clothed with privilege. Otherwise, he has no defense to the battery, at least insofar as it involves the use of excessive force."

Chinn, 839 A.2d at 706. When negligence is pled in a situation involving the intentional use of force by police officers,

> that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care. It is tautological to speak of the applicable standard of care as being the duty not to use excessive force; that is the precise boundary line of the privilege itself, and it matters not whether it is exceeded because of the deliberate intention of the officer or through a mistake as to the limit of objectively reasonable allowable force. Liability is imposed by the very nature of the limitation of the privilege itself. So here, where the battery began with the clear intent of the officers to initiate a seizure, the battery did not transmogrify into negligence by the fact that the officers may have in the process mistakenly crossed the line of permissible force. Any "negligence" was inherent in the battery itself, which remained a battery but now unprivileged.

Id. at 711.

Plaintiff's claim of negligence is not distinctly pled and based on a situation apart from the officer's alleged use of excessive force. Even if the officers "mistakenly" crossed the line into excessive force, the negligence was inherent in the battery itself. The Chinn Court clarifies the difference between battery and negligence in the situation

- 9 -

of an officer using excessive force:

> While it may be . . . that the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force. An unwanted touching may in its inception be intentional, a battery, or accidental, possibly negligent. But once it is found to be intentional, a battery tortfeasor is liable for the full range of consequences, intended or not, including harm and transferred liability. Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege having ended at the point where excessive force began. To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion. It also raises the risk that even where no excessive force is used, the jury will conclude that some undefined negligence was present for which relief of some sort is justified. A battery was committed and the officer is liable unless and only to the extent that the officer is clothed by the privilege.

Id. at 707 (citations omitted). When an officer is making an arrest, she or he is acting intentionally, regardless of whether the force used was excessive or not. The Court agrees with the reasoning in Chinn and will summarily deny Plaintiff's argument.

The United States contends that sovereign immunity is not waived for cases arising "out of" a battery or assault. The United States therefore requests dismissal of Plaintiff's negligence claims which arise out of battery, assault, and false imprisonment:

> 14. The United States is vicariously liable for the failure of the Individual Defendants to conform to their legal duty of care. This includes, inter alia, the following duties:
>
> > a. The United States is vicariously liable for the failure of the Individual Defendants to conform to their legal duty of refraining from causing unreasonable physical injuries, where such injuries are caused by conduct which goes beyond the real or apparent necessities of his or her own defense.
> >
> > …
> >
> > d. The United States is vicariously liable for the failure of the Individual Defendants to conform to their legal duty of refraining from holding Plaintiff against her will without proper paperwork, a

proper arrest or proper just cause.[3]

(Doc. 39 at 3–4). The United States does not seek to dismiss the claims in subparagraphs 14(b), 14(c), and 14(e), that the United States is vicariously liable for (b) failing to protect Plaintiff, (c) leaving Plaintiff in solitary when she was in need of immediate medical attention, and (e) failing to administer aid. Id.

The Court previously determined that it did not have subject matter jurisdiction over claims (2), (3), and (4) because Defendants Ashley, Williams, and Greyeyes were not federal law enforcement officers pursuant to § 2680(h) and therefore not subject to the FTCA's waiver of sovereign immunity. Based on that finding, the Court will analyze whether Plaintiff's negligent supervision claims that the United States seeks to dismiss arose out of the alleged intentional torts committed by Defendants Ashley, Williams, and Greyeyes. (Doc. 39 ¶¶ 14(a), 14(d).) To determine whether a claim "arises out of" one of the enumerated torts in the FTCA's exception, courts "look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)." Sabow v. United States, 93 F. 3d 1445, 1456 (9th Cir. 1996) (citations omitted). In analyzing section 2680(h), the Ninth Circuit sorts claims of negligence that arise out of the enumerated intentional torts in two distinct categories:

> negligence based entirely on a theory of respondeat superior (which cannot give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees) and independent negligent acts or omissions by the government that are proximate causes of the harm (which can give rise to liability on the part of the United States under the FTCA for the intentional torts of government employees).

Senger v. United States, 103 F.3d 1437, 1441 (9th Cir. 1996). If the negligence action is based solely under a respondeat superior theory, it is barred under the intentional torts exception. Id.; see also Bennett v. United States, 803 F.2d 1502, 1503-04 (9th Cir. 1986) (explaining that the policy underlying §2680(h) was to insulate the government from

---

[3] The United States seeks to dismiss the negligence claim in subparagraph (d) for the actions of Delores Greyeyes only. This leaves the claim arising out of false imprisonment for the actions of Carlos Yazzie.

- 11 -

1 liability for acts it was powerless to prevent such as assaults and batteries where there
2 was no known history of similar behavior.)

3 Here, Plaintiff's claims of battery, assault, and false imprisonment were
4 intentional torts allegedly committed by employees of the United States, not independent
5 acts or omissions by the United States itself. Because the claims of negligence against the
6 United States concerning the intentional torts of Defendants Ashley, Williams, and
7 Greyeyes are based solely on a theory of respondeat superior and those intentional torts
8 were dismissed from the case, they cannot give rise to liability on the part of the United
9 States under the FTCA.

10 Defendant Yazzie did have an SLEC and is subject to the exception of United
11 States liability for federal law officers. Therefore, the negligence claim arising out of the
12 alleged false imprisonment claims concerning him will not be dismissed.

13 The Court finds that Plaintiff's negligence claim in 14(a) is dismissed. The Court
14 also finds that Plaintiff's negligence claim in 14(d) is dismissed only for the actions of
15 Defendant Greyeyes.

16 In summation, all Individual Defendants are dismissed and five claims against the
17 United States remain in this case. They are: (1) False Imprisonment for the actions of
18 Yazzie; (2) Negligent Supervision for the alleged False Imprisonment committed by
19 Yazzie; (3) Negligent Supervision for the failure of the Individual Defendants to protect
20 Plaintiff from unreasonable uses of force by other Individual Defendants; (4) Negligent
21 Supervision for the negligence of Individual Defendants in leaving Plaintiff in solitary
22 confinement when she was in need of immediate medical attention; and (5) Negligent
23 Supervision for the failure of Individual Defendants to administer aid to Plaintiff when
24 her injuries had been directly caused by the Individual Defendants.

25 **D. Defendant United States of America's Motion to Strike Answer**

26 Fed. R. Civ. P. 12(f) permits a pleading to be struck, in whole or in part, for
27 advancing "an insufficient defense or" containing "any redundant, immaterial,
28 impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such action may be taken either

on motion or *sua sponte*. Id. ("The court may act…on its own; or…on motion made by a party.") "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial…." Sidney–Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).

Because the Court granted the substitution of the United States for the Individual Defendants and dismissed them from this case, there is no longer a need for their independent answers. Therefore, the Court will grant the motion to strike the Individual Defendants' answers.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED GRANTING** Defendant United States of America's Notice of Substitution (Docs. 18, 44.) and dismisses the Individual Defendants: April Ashley, Eric Williams, Delores Greyeyes, and Carlos Yazzie.

**IT IS HEREBY ORDERED GRANTING** Defendant United States of America's Motion to Dismiss First Amended Complaint. (Doc. 45.) Plaintiff Ruby Gatling's claims of (1) assault against Defendants Ashley and Williams (Doc. 39 at 5 ¶¶ 18-22.); (2) battery against Defendants Ashley and Williams (Id. at 5-6 ¶¶ 23-27); (3) false imprisonment against Defendant Greyeyes (Id. at 6 ¶¶ 28-32); (4) negligent supervision arising out of the assault and battery allegedly committed by Defendants Ashley and Williams (Id. at 3 ¶ 14(a)); and (4) negligent supervision arising out of the false imprisonment allegedly committed by Defendant Greyeyes (Id. at 4 ¶ 14(d)) are dismissed with prejudice.

Left before the Court are five claims against the United States: (1) False Imprisonment for the actions of Yazzie (Id. at 6 ¶¶ 28-32); (2) Negligent Supervision for the alleged False Imprisonment committed by Yazzie (Id. at 4 ¶ 14(d)); (3) Negligent Supervision for the failure of the Individual Defendants to protect Plaintiff from unreasonable uses of force by other Individual Defendants (Id. at 4 ¶ 14(b)); (4) Negligent Supervision for the negligence of Individual Defendants in leaving Plaintiff in

solitary confinement when she was in need of immediate medical attention (Id. at 4 ¶ 14(c)); and (5) Negligent Supervision for the failure of Individual Defendants to administer aid to Plaintiff when her injuries had been directly caused by the Individual Defendants (Id. at 4 ¶ 14(e)).

**IT IS FURTHER ORDERED GRANTING** Defendant United States of America's Motion to Strike Answer. (Doc. 46.) The Clerk of Court is directed to strike the Answer filed by April Ashley, Eric Williams, and Delores Greyeyes. (Doc. 42.)

**IT IS FURTHER ORDERED DENYING** Plaintiff's Motion for Additional Time to File a Response to Motion to Dismiss as moot. (Doc. 48.)

Dated this 1st day of July, 2016.

Honorable Stephen M. McNamee
Senior United States District Judge